UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.  8:06-cr-499-T-23TGW
8:08-cv-223-T-23TGW

DILIO ANTONIO ESCARRIA-MONTANO
_____/

# **O R D E R**

Escarria's motion to vacate pursuant to 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his conviction for conspiracy to possess with intent to distribute cocaine while on board a vessel, for which offense Escarria serves 168 months. Escarria pleaded guilty pursuant to a plea agreement. The respondent admits that the motion to vacate is timely. Response at 3 (Doc. 12)  The motion to vacate lacks merit.

## **FACTS AND PROCEDURAL HISTORY**[1]

On or about November 29, 2006, the defendant along with seven other coconspirator crew members, all Colombian nationals, were traveling in the Eastern Pacific on the fishing vessel the Mary Valencia. The crew of the Mary Valencia had departed the coast of Colombia carrying a cargo of 108 bales of cocaine. They were spotted approximately 240 nautical miles from the nearest land mass, the Malpelo Island, in international waters. The Mary Valencia was flying under a Panamanian flag and had markings of registration on it. The Panamanian Government was contacted to verify registration. The Panamanian Government confirmed Panamanian registration of the vessel and granted authority to board and search the Mary Valencia. The Colombian Government was also contacted when the crew asserted Colombian citizenship. The Colombian Government authorized jurisdiction over the prosecution of 6 out of the 8 crew members, to include the defendant.

---

[1] This summary of the facts derives from the plea agreement. (Doc. 50 at 12-14)

On November 29, 2006, a Helo team launched from the USS Thatch spotted the Mary Valencia during a routine patrol of the Eastern Pacific. The Mary Valencia changed it's course in an effort to elude the Helo team's efforts to hail her.  The USS Thatch then proceeded to intercept the Mary Valencia.

As the USS Thatch approached the Mary Valencia it went dead in the water and the crew members were observed attempting to scuttle the vessel by setting it on fire.  As a result there was a violent explosion that resulted in the severe injuries of several of the crew members.  The crew members jumped into the water and were rescued by a USS Coast Guard Boarding Team dispatched from the USS Thatch for the purpose of rendering assistance to the crew members in the water.  Once they accounted for all of the crew members in the water, the Coast Guard Boarding Team boarded the Mary Valencia to search for other crew members who may have been injured and still on the boat and to assess the damage.

A search of the vessel revealed that the crew had attempted to set the boat on fire by stuffing the fuel tank with fuel soaked rags and pouring gasoline on the deck of the boat.  A further search revealed a hidden compartment on the Mary Valencia in which was found 108 bales of a substance that tested positive for cocaine.

The Defendant's presence on the vessel was part of an unlawful agreement with others to possess with intent to distribute five (5) or more kilograms of cocaine.  The Mary Valencia was seized with approximately 2700 kilos of cocaine on board and the Defendant and 5 co-conspirators were taken into custody by the Coast Guard with the Middle District of Florida being the place at which the defendant and co-defendants entered the United States.  The other two crew men most severely injured in the explosion were returned to Colombia for treatment and prosecution.

Escarria's plea agreement contains a waiver of right to appeal or collaterally challenge his sentence, which waiver provision is standard in this district.  Nevertheless, Escarria appealed.  The circuit court enforced the waiver provision by dismissing the appeal. (Doc. 207)  Escarria's motion to vacate challenges the effectiveness of both trial and appellate counsel.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Escarria claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).  Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S. Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice.  Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must

judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.  <u>Strickland</u> requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Escarria must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92.  To meet this burden, Escarria must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

<u>Strickland</u> cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91.  Escarria cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done.  We ask
> only whether some reasonable lawyer at the trial could have acted, in the
> circumstances, as defense counsel acted at trial . . . .  We are not
> interested in grading lawyers' performances; we are interested in whether
> the adversarial process at trial, in fact, worked adequately.

<u>White v. Singletary</u>, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  <u>Accord</u> <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial

- 4 -

lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

Strickland governs also an ineffective assistance of appellate counsel claim.  A petitioner fails to prove the deficient performance prong by showing that appellate counsel omitted an issue on appeal.  Counsel need not raise every nonfrivolous issue.  Jones v. Barnes, 463 U.S. 745 (1983).  An appellate advocate provides effective assistance by winnowing out weaker claims and focusing on the appellate claims most likely to prevail:

> It is difficult to win a Strickland claim on the grounds that appellate counsel pressed the wrong legal arguments where the arguments actually pursued were reasonable in the circumstances.  We have emphasized that even in a death penalty case, counsel must be "highly selective about the issues to be argued on appeal . . . ."  United States v. Battle, 163 F.3d 1, 1 (11th Cir. 1998).  The district court, having considered the record and [appellate counsel]'s testimony during the state post-conviction proceeding, found that [appellate counsel] had carefully considered many of the claims now raised in appeal, but ultimately chose to pursue the claims he felt were most likely to prevail and winnow out the arguments he thought were less persuasive.

Johnson v. Alabama, 256 F.3d 1156, 1188 (11th Cir. 2001), cert. denied 535 U.S. 926 (2002).

Ground One

Appellate counsel challenged Escarria's not receiving a safety valve sentence.  Escarria argues that, because he does not qualify for the safety valve, appellate counsel was ineffective for asserting that claim.  Escarria waived his right to a direct appeal and

the circuit court dismissed the appeal based on the waiver.  <u>Strickland</u> requires proof of both deficient performance and prejudice.  Escarria shows no prejudice.

<u>Ground Two</u>

Escarria alleges that he failed to understand the effect of the appellate waiver provision and blames trial counsel for not fully explaining the provision.  Escarria's alleged misunderstanding is belied by the record of the plea hearing, at which Escarria pleaded guilty with two co-defendants.[2]

> The Court:   The reason that I ask you these questions is that it is the government's position that once you plead guilty, based upon this plea agreement, you will not be able to challenge your lawyer's work for you in the sentencing aspects of this case either on appeal or in any collateral proceeding or other proceeding that you might try to bring to set aside your sentence or finding of guilt based upon your lawyer's representation and sentencing matters.
>
> Do you understand that, Mr. Hurtado?
>
> Hurtado:[3]   Can you repeat?
>
> The Court:   Yes.  There's a provision in your plea agreement that you have signed, and it says that you cannot challenge your lawyer's representation of you in regard to sentencing issues, either on appeal where you ask another court to look at what the trial court has done, or by filing another motion later asking some other court to look at what your lawyer has done.  Once you sign this plea agreement and plead guilty, you cannot challenge your lawyer's work in sentencing matters.

---

[2] Because one of the co-defendants expressed concern about the appeal waiver provision, the magistrate judge's explanation is more thorough than normal.  Escarria participated in this more thorough explanation.

[3] Co-defendant Hurtado-Cuero.

- 6 -

|  |  |
|---|---|
|  | Mr. Martinez?[4] |
| [Counsel]: | Thank you, Your Honor.  I think this is a good time for me to bring this up.  I was meeting with Mr. Cuero last night at the jail for several hours.  He signed this plea agreement January the 21st.  He has already completed substantial cooperation with the agents in this case, okay.  I went to go see him yesterday because he was concerned about the appeal waiver. Someone in the jail made him concerned about that provision in the plea agreement.  When he came out—when the marshals brought him out today, he told me that he no longer wanted to plead guilty pursuant to the plea agreement, but wanted to enter an open plea to the Court. This, in my estimation as his counsel, would be a grave error because he has already earned a substantial—according to the government—a substantial reduction of his sentence predicated upon his assistance which he's not going to be entitled to if he persists in proceeding this way. |
|  | I've talked to the government, and I understand that there is another group that will be pleading on the 27th.  Even though he's instructed me that he wants to plead open, I feel uncomfortable in permitting him to do that until I could have a chance to talk to him some more.  I would ask the Court if we could place his case on the calendar for the 27th so that I might speak to him some more about this decision of his. |
| The Court: | Mr. Hurtado, sir, you have some concerns about pleading guilty on the plea agreement at this time? |
| Hurtado: | Not the pleading guilty. |
| The Court: | I mean pleading guilty on the plea agreement.  Because the plea agreement requires you to give up your right to appeal.  And so since we're on this issue, let's go ahead and talk about it and then you can decide what you want to do. |
|  | If you look at page 10 of the plea agreement—and I don't expect that you read English, but on page 10 of this plea agreement, there is a provision and this is as to all of the defendants.  And this provision says that you are giving up your right to appeal or to collaterally challenge your sentence |

---

[4]   Defense counsel for co-defendant Hurtado-Cuero.

|             | in this case when you sign and agree to plead guilty. In a typical case, when a defendant is charged and convicted after a jury trial, or when a defendant pleads guilty without a plea agreement, he or she enters a so-called open plea. That defendant keeps the right to challenge the sentence in a higher court. In our case it goes to what we call the Eleventh Circuit Court of Appeals. There will at that point be a three-judge panel who will look at what the trial judge has done regarding guilt and sentencing. And those judges can say that the judge in the trial court did everything correctly or they can say that things weren't done properly. |

This plea agreement severely limits your ability to make any such challenge. The only time in which you can challenge your sentence on appeal are for the reasons that are in the plea agreement.

Do you understand me so far? Mr. Hurtado?

Hurtado: Yes.

The Court: Mr. Escarria?

Escarria: Yes.

The Court: And Mr. Estrada?

Estrada:[5] Yes.

The Court: Okay. Now the times when you are permitted to file an appeal are as follows. First if the Court were to sentence you to a sentence above the guideline maximum as the Court determines the guidelines to be; or two, if the sentence exceeds the statutory maximum penalty; or three, if the sentence violates the Eighth Amendment to the United States Constitution, which protects defendants against cruel and unusual punishment; or four, if the government for some reason were dissatisfied with your sentence and sought to appeal, then you could file a cross appeal.

But those are the only instances in which you can file an appeal. If you attempt to file an appeal for any other reason,

---

[5] Co-defendant Estrada-Obregon.

|              | it is very likely that the appeals court will reject your appeal without even looking at whether it has any underlying merit because you have given up your right to file an appeal for any reason other than the ones that are in the plea agreement. |

Do you understand that?  Mr. Hurtado?

Hurtado:     Yes.

The Court:   Mr. Escarria?

Escarria:    Yes.

The Court:   Mr. Estrada?

Estrada:     Yes.

The Court:   Now you have to keep in mind that the plea agreement offers you some benefits.  And the waivers are giving up your right to appeal or to collaterally challenge your sentence is one of the things that you are giving up in exchange for those other benefits.

Do you understand that?  Mr. Hurtado?

Hurtado:     Can you repeat that again?

The Court:   Yes, sir.  The plea agreement offers you certain benefits.  And we're going to go over those benefits in a few moments.  This appeal waiver and waiver of your right to challenge your sentence collaterally are things that you are giving up in exchange for the other benefits that are offered to you in the plea agreement.

Do you understand that?

Hurtado:     Yes.

The Court:   Mr. Escarria?

Escarria:    Yes.

Transcript of Plea Hearing at 11-17 (Doc. 178).  Escarria represented that he fully understood the appeal waiver.  The colloquy ensured that Escarria understood the significance of the appeal waiver, a provision that the circuit court enforced on direct appeal.  See Williams v. United States, 396 F.3d 1340, 1342 (11th Cir.) ("[A]t the plea colloquy, the court specifically questioned Williams concerning the specifics of the sentence-appeal waiver and determined that he had entered into the written plea agreement, which included the appeal waiver, knowingly and voluntarily."), cert. denied 546 U.S. 902 (2005).  The record belies Escarria's alleged misunderstanding because he represented under oath that he understood the significance of the appeal waiver.

Accordingly, the motion to vacate pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.  The clerk shall enter a judgment against Escarria and close this case.

ORDERED in Tampa, Florida, on October 4, 2010.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE